# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TAURUS FLAVORS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15 C 265 |
| | ) | |
| MORE FLAVORS, INC. and | ) | Judge Jorge L. Alonso |
| MARIAN MCAFEE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion for default judgment of plaintiff, Taurus Flavors, Inc. ("Taurus"). The Court previously entered orders of default against both defendants, More Flavors, Inc. ("More Flavors") and Marian McAfee, More Flavors' principal. (ECF Nos. 23, 26.)[1]

"The basic effect of an entry of default . . . is that 'upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (brackets omitted) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). However, the Court still must consider whether those facts state a claim. *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688 (3d ed. 1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in

---

[1] Only after the defaults were entered did counsel appear for defendants. Defendants' current counsel filed unsuccessful motions to vacate the defaults and for reconsideration, and he also filed response and surreply briefs as to the instant motion for entry of default judgment.

default does not admit mere conclusions of law."). Furthermore, "the entry of default does not of itself determine rights." *VLM Food Trading*, 811 F.3d at 255 (internal quotation marks, emphasis, and citation omitted). The plaintiff still must establish its entitlement to the relief it seeks. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

This action arises out of More Flavors' alleged continued use of plaintiff's trademarks after plaintiff terminated the license agreement that permitted that use. The complaint contains claims for trademark infringement and unfair competition in violation of the Lanham Act (Counts I and II); trademark infringement in violation of the Illinois Trademark Registration and Protection Act (Count V); breach of contract (Counts III and IV); and piercing the corporate veil (Count VI). Plaintiff moves for default judgment on Counts I, II, IV, and V; in plaintiff's reply brief, plaintiff clarifies that it is seeking only "monetary damages based on Defendants' breach of the Licensing Agreement" and "attorney's fees and injunctive relief pursuant to the Lanham Act and Illinois Anti-Dilution Act." (Pl.'s Reply at 5-6.) The Court will examine each request in turn.

**Monetary Damages for Breach of Contract**

Plaintiff seeks entry of a judgment in its favor of $1,286,699.20 against both defendants for breach of what it calls the "License Agreement," which is attached as Exhibit 1 to the complaint. (Pl.'s Reply at 4.) Exhibit 1 to the complaint is a two-page document dated June 1, 2003 and titled "Agreement." It begins: "THIS AGREEMENT, between Taurus Flavors, Corporation at the above address, has agreed to permit **MORE FLAVORS #3** located inside Park Manor Bowl, 115 East 75th Street, Chicago, Illinois **ONLY** do business as Taurus Flavors." (Compl., Ex. 1, at 1.) The Agreement then provides as follows in its entirety:

2

Under this AGREEMENT, **MORE FLAVORS #3**, dba Taurus Flavors, must follow all rules and regulations of the corporation. Those rules are as follows:

1) **MORE FLAVORS #3**, must obtain sanitation license or meet all requirements of the city and/or state in which they are doing business.

2) **MORE FLAVORS #3**, shall pay all taxes as required by the municipality, State and Federal government including Federal 941 monthly and quarterly taxes and 940, 1120 estimates of quarterly and annual taxes. The Corporate Office in Chicago, Illinois will monitor all taxes.

3) Property must be fully insured according to City laws, including Workers' Compensation and Liability Insurance.

4) Ten percent (10%) of monthly gross sales are to be paid to the parent company (Taurus Flavors Corporation).

5) Quality service must be given at all times with a positive attitude.

6) To monitor all activities, a supervisor will be established. Supervisor's responsibility, if not carried out effectively, will be taken over by the Corporation until further notice.

7) All rights to use the trademark Hoagy Supreme and Steak Supreme will be given to **MORE FLAVORS #3**. If those names are not used according to the Corporation rules, the Corporation has the right to demand that MORE FLAVORS #3 give up the use of the Corporation name Taurus Flavors.

8) Business at all times will be performed according to the Corporation rules.

9) Illegal activities on the premises including, but not limited to, use of a[illegible][2] contraband drugs, association with known drug users and sellers, shall [illegible] sufficient cause for the Corporation to terminate this Agreement.

10) Parent Company, (Taurus Flavors Corporation), upon termination of the Agreement retains the right to demand that MORE FLAVORS #3 give up the right to use Taurus Flavors name and trademark names Steak Supreme and Hoagy Supreme.

11) **Dress Code**. All employees, while on duty, shall wear a hair net covering the entire head. Employees are not allowed to wear baggy pants. Shirts shall be

---

[2]The illegible portions of this paragraph were evidently covered by an exhibit sticker, and the document was then copied.

tucked inside pants.  Male employees shall wear bow tie and white shirt, female employees shall wear white blouse with necktie.  All shirts and aprons must be fresh and neatly pressed each day.

(*Id.* at 1-2.)  The Agreement was signed by McAfee as "More Flavors #3, Owner" and Edward Perkins as "Taurus Flavors, Owner."  (*Id.* at 2.)

Count IV, plaintiff's breach of contract claim that seeks damages, does not state a claim against McAfee because she was not a party to the Agreement.  Nor does Count III, plaintiff's breach of contract claim that seeks injunctive relief.  Accordingly, those claims are dismissed with prejudice as to McAfee.  As for More Flavors, its liability for damages is questionable due to the vague allegations of the complaint.  Plaintiff alleges that after executing the Agreement as well as an August 6, 2002 agreement that has never been submitted to the Court, "More Flavors almost immediately ceased making payments pursuant to intended schedules and amounts." (Compl. ¶ 21.)  What the complaint does *not* allege is that More Flavors failed to make the "monthly gross sales" payments specified in paragraph four of the Agreement.  As to precisely how More Flavors is alleged to have breached the Agreement and caused damages, Count IV alleges only that "Defendants have materially breached the [Agreement] by failing to operate their licensed Taurus restaurant in compliance with Taurus' standards and specifications, resulting in the termination of the License Agreement," and that as a result "Taurus has been damaged in an amount equal to the lost royalty fees it would have earned for the remainder of the License Agreement's term."  (*Id.* ¶¶ 43-44.)  The vagueness of these allegations is problematic because it appears that at least some of the "standards and specifications" of the Agreement are themselves unenforceable for vagueness.

In any event, plaintiff fails to establish that it is entitled to the damages it seeks in its motion for breach of the Agreement.  It first contends that it is entitled to $619,972.00 in

"Monthly Royalty Fees during the Arrears Tenure." (Pl.'s Mem. Supp. Mot. at 9.) In plaintiff's view, Exhibit 2 to its memorandum, which is a collection of More Flavors' monthly Illinois Department of Revenue ("IDR") Sales and Use Tax Returns, "demonstrates monthly income of" $40,188.75 "for the 38 East 112th Street store"; More Flavors "should have paid ten (10%) of this gross revenue on a monthly basis, calculated to be . . . $4,189"; and using this monthly fee for the period from June 1, 2003 through October 1, 2015, More Flavors owes Taurus $619,972.00. (*Id.*) Furthermore, plaintiff contends that it is entitled to an additional $619.972.00, which it "estimates" are the "cumulative total royalty fees accrued during the Arrears Tenure from" More Flavors' "remaining locations." (*Id.* at 10.)

There are several serious problems with these arguments. First, plaintiff fails to explain what the figures in the IDR documents represent and how plaintiff derived the $40,188.75 figure. Second, plaintiff fails to explain why it believes it is entitled to ten percent of monthly gross sales for More Flavors' location at 38 East 112th Street or for any other locations when the Agreement at issue pertains only to the 115 East 75th Street location.[3] Third, plaintiff fails to explain why it believes it is entitled to a percentage of monthly gross sales for a twelve-year period when the Agreement did not specify any term. Accordingly, the Court will not award the requested damages pertaining to sales.

Plaintiff contends that it is entitled to an additional $46,755.21 in damages, which it states that More Flavors "agreed to pay" "[a]s consideration for purchasing the equipment, lease,

---

[3]Plaintiff complains that it "pressed" defendants' counsel during the course of this litigation for "full accounting information and monthly sales reports," and it states that More Flavors "was unwilling to participate in preliminary discovery [or] informal document disclosures." (Pl.'s Mem. Supp. Mot. at 9 & n.10.) But it is not clear why plaintiff would be entitled to discovery regarding sales at locations other than the 115 East 75th Street location. Moreover, plaintiff never sought relief from the Court to obtain discovery that would support its default judgment motion.

5

and client assets of Taurus Flavors." (Pl.'s Mem. Supp. Mot. at 10.) This agreement was allegedly made separately from the Agreement that the Court has been discussing. Plaintiff has not submitted the separate agreement to the Court, however, nor does it allege in the complaint that More Flavors breached this agreement. Because plaintiff seeks damages for breach of an agreement that is not the subject of the complaint, the Court will not award the requested $46,755.21.

"A judgment by default may not be entered without a hearing on damages unless . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323. Plaintiff has failed to submit such evidence in support of its request for an award of damages for breach of contract.

**Injunctive Relief and Attorney's Fees for Trademark Infringement**

Plaintiff argues that it is entitled to a permanent injunction "to prevent any future infringement of Taurus' trademarks pursuant to the Lanham Act." (Pl.'s Mem. Supp. Mot. at 15.) The complaint refers to "defendants'" infringement but does not allege any facts indicating that defendant McAfee directly infringed plaintiff's trademarks. Plaintiff contends that McAfee is liable on a theory that she "directly participated in" the infringing conduct and "had the right and ability to supervise and control her company's wrongful conduct, and derived financial benefit from it." (*Id.* at 6.) But those facts are not alleged in the complaint, so they are not taken as true by virtue of McAfee's default, and plaintiff submits no evidence supporting its argument.

As for More Flavors, the complaint alleges that it continued to use Taurus's federal trademark at the same restaurant location after Taurus terminated the Agreement that gave More Flavors a license to use the mark, and that at the time the complaint was filed, More Flavors

continued to operate its business there, offering the same products and services and using Taurus's mark. (Compl. ¶ 23.) These facts are taken as true as a result of More Flavors' default, but they do not warrant injunctive relief because plaintiff does not offer any evidence that More Flavors is currently operating at the same location and continuing to use Taurus's federal trademark. Defendants state that they currently operate two locations, neither of which is the location at issue in the Agreement involved here. (Defs.' Resp. at 3.) Without evidence that More Flavors continues to operate at the location that is the subject of the Agreement, the Court will not enter the requested injunctive relief regarding future infringement. Plaintiff also requests that the Court "award injunctive relief to Taurus under the Lanham Act allowing immediate seizure of all fixtures, Company property, and real property owned by the Defendants in order to satisfy any part of the judgment not satisfied monetarily." (Pl.'s Mem. Supp. Mot. at 18.) Putting to one side the fact that the Court is not entering a monetary judgment, plaintiff presents no argument and cites no authority for this request, so it is denied.

Finally, plaintiff maintains that it is entitled to an award of its reasonable attorneys' fees and costs under both the Lanham Act and the Illinois Trademark Registration and Protection Act (the "Illinois Act"). The Court is unpersuaded. The Lanham Act provides that when a trademark violation has been established, the court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. Plaintiff fails to cite this provision and presents no argument for why this is an "exceptional" case, therefore waiving the argument. As for the Illinois Act, plaintiff relies upon the "anti-dilution" provision, 765 ILCS 1036/65, which provides that the owner of a state-registered or federally-registered trademark is entitled to the remedies for infringement set forth elsewhere in the Illinois Act (which include reasonable attorney's fees) where the trademark is famous and distinctive, defendant's use of the mark

7

diluted such distinctiveness, and there was willful intent to cause such dilution.  *Id.*  Plaintiff presents no argument as to why the anti-dilution provision applies here when there are no corresponding allegations.

Plaintiff has failed to demonstrate that it is entitled to any of the relief it seeks, so plaintiff's motion for entry of default judgment [45] is denied.  A status hearing is set for May 4, 2016 at 9:30 a.m. to discuss the next steps in this case.


**SO ORDERED.**  ENTERED:  April 20, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**